Good morning judges of the court, my name is Vincent DiBenedetto, I'm pro se in the So I'll start off by what happened on August 15, 2018. I was taking my daughter to camp that day down the road from where I live in Putnam County and right as I started entering the entrance ramp of I-84 there was a state trooper out on the shoulder assisting another vehicle who was on and he saw me and he pointed me to pull over and I did so and in doing so I put my cup of coffee down the cup holder show respect to when you pull over and he came over to me says I acknowledge you're on your cell phone I said also I was not on the cell phone he said well I saw you put something down I said a cup of coffee I was home I put down the cell phone my cell phone is in the passenger seat being charged the only individual on the cell phone today my daughter and she's in the back seat so he looked and said he paused and said give it to me okay so I unplugged it and I gave it to the officer try to open it couldn't open it give it back to me open it I opened it for him I gave it back I complied with what he was asking me to do and he tapped tap search tap tap search tap tap search so clearly I was not on the phone gave it back to me I said the only person again officer give me a license and registration so I give him my license and I said before I make any move in the vehicle the registration and insurance card is inside the golf compartment I'm letting you know why I told you I want to see it I said officer just please calm down I have a child in a car it's not necessary so I went I retrieved it I went to give it to him and he wasn't looking at me he was like and I looked in my mirror and I saw he's just pulling over the next vehicle coming onto the entrance ramp so he proceeded to take my write me a ticket said it gave you a ticket on my I went on my way and of course I was you know a bit infuriated to the fact that I complied with everything and here I was getting you know reprimanded for something I wasn't doing especially in front of my daughter so I did take her to a camp that day and later on that day I did find I contacted the state police you know and they said well you got to do by email so I emailed the complaint and then two days later I got a call back I guess from barracks and it was I guess one of those places and he was telling me you know what happened I said well he's well did you give him the phone yeah well you shouldn't have like I shouldn't have I complied with the officer uh wait and he saw you are on the phone yes I wasn't and he still wrote you a ticket yeah well he shouldn't have so what do you want me to do about it I says excuse me officer this is how you talk to somebody filing a complaint I mean this is a sir he said well just just uh plead not guilty and you have a court date and that was it that was okay so I did so I went on January 15th 2019 and uh I met with the prosecutor prosecutor Gill and he took me in a in a room I guess for I don't know I've never been in court before honestly for nothing so and you know he was I was explaining what's happening my daughter was with me didn't look up at me said hey you know what I'll give you a stop sign three points I says no not good I'm not taking a stop sign for three five I'd rather have a trial he said you're not taking answers no I'm not gonna take it I'd like to go see the justice and he said okay fine so I went in so justice justice mullay and so what and it's March 4th 2019 and okay I go to court be there for 4 45 courts 5 30 I get there and prosecutor Gill's there and he looks at me and says huh you again I says yes I'm here for court he's so I says is Trooper Cole here no he's not here I says is he coming I don't think so I said then I'd like to go see the justice and let him know I'm here you're not going anywhere I says what do you mean I'm not going anywhere he says you're staying put he ordered a female state trooper to call him at his house and order him to get to court and I looked at him I says I don't understand he said I hear that why he said why he says look I don't have a cell phone I said I don't know I'm pro saying I at least can go to my car and call my wife you're not leaving the you leave I'm gonna hold you in contempt of court okay I didn't know any better your honor that now I know I've learned throughout the years that trust so he waltzes in over almost two hours later not in uniform I didn't know who the trooper was he just looked like he came off a golf course and I'm like so we went in and you know and you know I sat there he sat there he knows who I was and he looked at me sickly overtime for me tonight that's okay I went in and then you know at that point I had no shot of winning I knew at that point that there was just it was just first of all I shouldn't even been in there because obviously the trooper didn't show but to actually stop the court stop seeing motorists to have someone call myself I'm pretty sure if I didn't go to court that night I wouldn't have gotten a call but so I saw something suspicious here going on between the prosecutor trooper and even the but I take it he's the witness right he's the witness for the prosecution the officer is well he's the one who issued the ticket he's the one who issued the ticket yeah so he's going to testify to what he claims he saw and heard right exactly but at that point I'm not even know why I'm in there because he didn't show he only showed because the prosecutor ordered a female trooper to call him at his house and take him to court clearly is prosecutor interference because I may be assuming that no one was going to show up for this whatever but now you have a trial I get the trial that's what I'm focused on yeah yeah it's right and so he's going to testify to what he's going to testify and you had the cell phone there or the phone records yes and the phone records show that there was no phone call first phone call was made at 8 30 to my mom a pullover happened about well the ticket was written at 8 15 so and you know then we got into you know he claims you know he sees yourself I've you know written thousands and thousands of tickets I've worked at the uh the area for a long time 25 years he goes on and on and he says you know that morning I was standing on the left side of the shoulder so I stand on the shoulder where no motorists can see me until they make the turn and I said to myself well that's that's not true at all because I know that entrance ramp I've been down there I moved there in 05 so and I have a turn you can see the entrance there and I 84 okay and then he says you know and in the vehicle swerve then the vehicle swerve it's not even in his support and deposition I was like wow now we're just on pilot on and then he went on he said well I acknowledge him on the phone that day I pulled him over told him pull over he pulled over I told him why I pulled him over wrote him a ticket and on his way he went well completely left out the fact that he told me to hand over the cell phone in the court so in there I got the chance to ask two questions and I said don't group a colleague the morning that you pulled me over did you not order me to handle my cell phone yes and did I not comply with every order you told me to do that day yes objection your honor it's over that was prosecuted well you can't really ask any more questions about this and it negated me from actually of course examining him and again I'm prostating him so I don't know when he passed so I'm trying to that's the whole premise of the court case so he gets up and then he starts saying you have a phone records I said yeah show me oh they're not good enough well where'd you get it from I said I'm from Verizon you know and then I says the first phone call is at 8 30 thereafter and Judge Brewster says well you know you got a lot of time and I says well due respect your honor if the ticket's written at 8 15 that means he's in his call my credentials at 8 30 your phone force phone that's a 15 minute gap okay and then he says to me you know you ever drive his after I says yes I do and it went back I guess I don't know eight or ten years but eight years six years and he said to me he's not good enough I said okay um he said I got one that goes back okay in 2012 he had a seat belt okay pleaded guilty paper 2010 he had no seat belt okay she was young okay I pleaded guilty he said well then back in 1989 I said 1989 I said your honor I was 20 years old living in the Bronx so if I could yes yes the district dismissed your um complaint because it was time it was filed too late um is is there any reason um uh that you you were you couldn't file before 2022 yes yeah I was getting that so obviously I lost the case that night and then I proceeded to file an appeal now up in Putnam County I had appeal in Brooklyn so I went to the courthouse in Putnam County and they had no idea what an affidavit of evidence was so the clerk clerk told me just go home and google it and I did and then I had to order the court transcripts which and I got in May of 2019 so it was because you thought you had to pursue the appeal process for the tickets yes I want to feel it because absolutely um so they said to me I went in and finally found out that I had an appeal in the Brooklyn court so I forwarded the um affidavit of errors out there and they got a court the um copy the court transcripts and joined the court clerk said to me okay uh in some time you'll get uh letters from the court about a brief I never got anything COVID hit and the next time I heard from Brooklyn appellate court was in December of 2021 and of course they denied it the appeal because they never got my brief and I says um Paul Kenny the chief clerk I say hey I never got anything from you guys you send it certified send it no we just send it right to the mail I says well I never got anything in court you know COVID shut everything down okay so back and forth back and forth then in 2022 I wrote to you know while that was trying to get that remedy I wanted a voice I said I wrote to the court and I wrote down to chief justice Laura Taylor Swain and she got my complaint about the uh the situation at hand so so we have the record um and uh have reviewed it and I think that is the issue on appeal right now is the the timeliness yes your complaint yes you understand your argument that you were pursuing the um the ticket appeal ticket yes I was there uh October 10th to I finally got the appeal down in this uh down district court in Westchester on October 10th with the panel and that that's the ticket part but the simple part the unlawful search is that's where I contacted Laura Taylor Swain and she got the complaint and she said to me she wanted two things from me a letter of timeliness and I gave her a chronological order what happened from this all the way to where we are and she wanted me to the New York state police out of the complaint I did such I forwarded to her she got it they wrote back she wrote back to me and said okay you're all good I'll give you 30 days to pay your court fees with the uh southern district in Westchester we're aware of the history of the case and so I think we have your argument you've reserved a couple minutes for rebuttal um and uh okay okay thank you good morning your honors Joshua Cohen for Maurice Coley may it please the court the district court correctly dismissed the amended complaint because any possible 1983 claim appellant could bring would be time barred all the relevant events here took place more than three years before appellant filed this lawsuit in July 2022 an appellant hasn't explained why he was unable to file this lawsuit earlier neither his amended complaint nor his brief describe any steps that he took to file this lawsuit before the limitations period expired and although he described steps that he took to pursue a state appeal within the limitations period those steps do not toll the statute of limitations for a federal 1983 claim so your your point essentially is that Mr. DiBenedetto is mistaken in thinking that the federal court sits to review the state court judgments such that he would have to exhaust his state appeals before coming to court right yes your honor he could have come to court to federal court in the first place certainly with respect to uh unlawful search contention with respect to the police officers demand for the cell phone correct and that occurred in August 2018 your honor right now with respect to the due process claim is it still your is it your contention also that he could file a federal complaint attacking his uh the the procedures in a state court quasi-criminal traffic proceeding while there were still appeals going on in the state court no that that would be prohibited your honor yeah so then why doesn't that toll the statute of limitations in other words uh i understand that the the claim of police misconduct is separate from uh the adjudication but if he's attacking the adjudication he couldn't file a complaint about that in federal court could he have not while it was pending your honor and he couldn't file it after the appeals were final because that would be barred by the Rooker Feldman problem if he then tried to have the federal court sit as a super court of appeals reviewing the state court judgment the federal would be to go to the Supreme Court of the United States yes your honor and uh and is that still the case if what he's saying is that uh not that the state court got it wrong but that there was some sort of conspiracy among the uh the the judge and the police officer and the prosecutor yes your honor because that would go to the legitimacy of the adjudication and so that would be prohibited that would require some whatever went on between those three if anything would be outside the record of the criminal case itself wouldn't it it's not in the it's not in either of his complaints either though your honor the only thing improper that he alleges is that the judge and the and trooper coley were friends on social media and that alone is not reason to find bias in a judge and and also as a matter um trooper coley wouldn't be the correct person to sue under these circumstances because he's not allowed to have any personal involvement in any unfair decision that the uh that the justice made okay and as far as the statute of limitations issue uh for 1983 uh claims uh the federal courts borrow the state statute of limitations right yes and it's three years in new york your honor yeah and uh but the state statute of limitations was suspended by governor cuomo was it not during a portion of this time correct your honor for 228 days uh-huh and why does why do we not do we not borrow that along with the limitations period in the statute so for as a preliminary matter it wouldn't matter for anything uh concerning the august 2018 traffic stop because right but for the for the due process claim so i haven't been able to find any federal cases applying that tolling provision to federal statutes such as 1983 i've seen it when there's state claims in federal court but not for any federal ones and i think that it would would not make sense to apply it here because the the courts had different capacities and were open at the federal courts were open and the state courts not necessarily and that's one reason why the state statute of limitations was suspended that's right your honor and i know at least the white plains federal courthouse was holding trials in november 2020 right i mean it's certainly not for the entire period that the state statute of limitations was suspended for most of that period down here there were trials and things going on also yes your honor okay unless the panel has any questions i'll conclude by respectfully asking this court to affirm thank you counsel mr demented if you've reserved two minutes for so once george chief justice laura swain got the complaint and told me to amend it she approved it and told me to go ahead and file a fee pay my fees with the southern district of westchester court to get a copy of summons and an amended complaint to then go ahead and serve the trooper and which i did so in um in january i tried but he's retired now so i have server wouldn't went up to albany and they wouldn't take it so at that time i had asked judge halperin to implement a valentine order and he did and the valentine was placed to obtain his address a week so i could go and serve him and he did and then the district attorney wrote back within the 30-day parameter of not wanting to hand over his address because he's retired and it's his home address and it wouldn't be safe for the public or for me to have judge halperin denied the request and they gave it they handed over which i got which turned out to be an old 17 month old address on the state was served to his house my wife went she's not part of the case and she's over 18 in april 2023 and the lady that answered the door said no he had they had purchased the property in november 2021 so it's a 17 month old address that the district attorney gave me so i contacted the office and sir andrew said to me well that's the best that they have i said well i don't think so because there's a there's a retired officer of the law who gets money but they need to know where he is he they have to have a current address because what happens if he retired in december and prior june he had an arrest and a year later he had to go trial they'd have to know where the trooper is and she basically brushed it off so i contacted judge halperin asked for an extension and he granted to me too so i had to then find a way to another server to find out where he actually was and with two extensions that judge halperin gave me and the balancing order i eventually did find where it was and had trooper coley served i did have a teleconference sir a conference with the district attorney kershaw dot mr kershaw bound judge halperin myself your time is up you're not going to get through i think everything you want to tell us but i'll you uh 30 seconds okay 30 seconds all i'm saying here your honors panel is i did everything that judge laura swain judge justice laura swain wanted me to do and just and judge halperin wanted me to do and i to the to the nines and at the very end we're just going to dismiss it based upon what you knew what the case was from day one if justice laura swain had not granted me the ability to pursue it well you do understand mr de mandato that a judge doesn't just sort of say i think this is barred by the statute of limitations they could even waive the statute of limitations if they should they the defendant uh could waive the statute of limitations so it it doesn't you know i understand your frustration no that you complied with these various things to get the case on the road but then when it gets on the road then they make a motion with respect to statute of limitations none of that has to do with the merits of the statute of limitations right but then the tolling part should have come in because i lost a lot of time with this sitting out in brooklyn for over two and a half years if brooklyn would have gone back with it with a halfway timely response to me i could have moved on a lot quicker so with covid in the middle of things and it's stalemate did everything i lost a lot of time your honor and i did i did like i said i followed the rules of what all the judges want me to do but all to go back to saying we're going to dismiss it uh just because so i don't understand the point of extensions extensions valence orders to go through the motions to go back to oh i understand you talked to you know like just how it said to me laura swain and i was like you mean chief justice laura saying yes it was just i couldn't believe it that i mean at that point then if laura if the justice didn't want me to pursue it or she saw fit but you see that's the point judges don't decide we don't want you to pursue something judges decide arguments that are put to them by the parties right so the statute of limitations issue did not arise until they raised it so all of this stuff that was going no but it was there yet excuse me i think what you're saying is and i understand your frustration that you had to go through a lot of trouble to get the trooper's address in order to serve him but that time is not what's being held against you you already filed the case by then right and the problem is until that trooper is served and until he appears and makes the argument that the case is barred by the statute of limitations no one's sort of going to tell you preemptively you can't come to court because of the statute of limitations no one's calculating that the issue is well first you have to serve somebody then until that happens nobody's even looking at the merits or the statutes limitations or anything else well when i bought the when i brought this to chief justice laura swain the first thing i heard thing was i need a letter of timeliness because she knew at that point that yes there was this conflict and you made your argument but they hadn't had a chance to make their argument yet right and their argument turns out to be meritorious you see right i mean the question that we're focused on is a fairly narrow one right which is how does the statute of limitations operate yes and i think what their argument is and i'm not saying it's right at this point we have to study it and we'll make some ruling but what their argument is is you could have filed this federal lawsuit on the very first day when you were unhappy with how the officer treated you you could have complained about his behavior in federal court that cause of action was there if he violated your fourth amendment rights you could have filed that suit you didn't have to wait to go through the trial and the state court proceeding and challenge the ticket and anything else you could have just said this is a fourth amendment violation right and i did i did start this litigation ticket in may of 2019 yeah that's when the appeals started on this and it got interrupted that's a whole separate system you see we do not sit to review decisions of state courts right we sit to address federal claims right that's all i want you to understand i understand and the time that was lost between the covid i don't understand why tolling would not have applied to it because if the if the courts would have went on like brooklyn supreme uh the brooklyn uh 1910 judicial court would have then there would have been a lot more time for me to then exemplify through the fourth amendment of right but i lost so much time they held it out there for two and a half years sitting there not any responses until i finally got them to this year to send anything but that's when i said to him you know obviously the the uh the tolling part i mean with covid shutting everything down i mean that's what i said all i really did was i did what all the justices were and i brought the to thank you mr diminuto we have your arguments thank you both and we'll take the case under advisement thank you